UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARQUES EARL HARRIS,

    Plaintiff,

v.                                                Case No. 25-cv-0140-bhl

NICK STACHULA,
OFFICER SCHLEI,
JASON DAERING,
OFFICER BARTOSHEVICH, and
OFFICER KLAHORST,

    Defendants.

## SCREENING ORDER

Plaintiff Marques Earl Harris, who is currently serving a state prison sentence at the Lincoln County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Harris' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Harris has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Harris has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $15.58. Harris' motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Harris, on January 19, 2024, he answered a knock at his door. Harris asserts that four police officers stood outside. Defendant Officer Daering informed Harris that someone had called 911 to complain about loud music. Harris states that he told police he would keep the music down, and then he attempted to close his door, at which time Daering asked Harris if his name was "Marquise." Harris responded that was not his name (his first name is Marques) and stated that no one named "Marquise" lived at the apartment. According to Harris, all five Defendants then said, "He is the guy get him." Daering allegedly pushed the door open, entered the apartment and forcibly guided Harris out of the apartment. Harris asserts that Defendant Nick Stachula patted him down and told him to sit on the steps. At that time, Officer Schlei, Officer Bartoshevich, and Officer Klahorst allegedly entered Harris' home and began to search for evidence.

Harris asserts that Defendants searched under his bed covers, inside pillowcases, in closets, in the bathroom, between couch cushions, and on top of cabinets and the refrigerator. According to Harris, Stachula stayed with him during the search, and he was not allowed to leave or go back into his apartment during the search. Eventually, Detective Stachula entered the apartment to retrieve a couple bags of drugs that officers had found. Stachula informed Harris that he could now apply for a warrant, and he was confident he would get one. Harris asserts that he told Stachula the drugs were not his and he should do what he has to do. Stachula then allegedly began to pressure Harris into giving consent to search the apartment. He informed Harris that if he did not give consent, he would take him into custody, but if he did consent, he would not take him into

custody. Harris asserts that he gave consent (after the search) after Stachula repeatedly threatened to take him into custody and charge him with various crimes. Harris states that he was never given an opportunity to call a lawyer, nor was he read his *Miranda* rights. According to Harris, a judge later determined that there were no exigent circumstances nor was there probable cause to justify the warrantless entry, search, and seizure.

### THE COURT'S ANALYSIS

Harris asserts that Defendants violated the Fourth Amendment when they entered and searched his apartment without his consent and without probable cause and when they unlawfully seized him. "At the core of the privacy protected by the Fourth Amendment is the right to be let alone in one's home." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 550 (7th Cir. 2014) (citations omitted). Further, "[t]he Fourth Amendment protects citizens against unreasonable searches and seizures. A search is generally considered unreasonable unless the government obtains a warrant issued upon probable cause." *U.S. v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). There are a number of exceptions to this general rule. For example, the prohibition does not apply when voluntary consent has been obtained. *Wonsey v. City of Chicago*, 940 F.3d 394, 399 (7th Cir. 2019) (citations omitted). Of course, consent must be obtained *before* the search. *See, e.g.*, *id.*

With these principles in mind, the Court will allow Harris to proceed on a claim that Defendants forcibly entered and then searched his home without his consent. Harris also states a claim against Defendants based on allegations that he was detained while Defendants conducted the allegedly illegal search of his apartment. *See Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (holding that "a citizen may not be detained by law enforcement officials without probable cause" and "an illegal search does not confer probable cause to detain the subject of the search while it is being carried out").

4

Harris does not, however, state a claim under §1983 based on allegations that Defendants never informed him of his *Miranda* rights, including his right to confer with counsel.  As the U.S. Supreme Court has recently confirmed, "the *Miranda* rules are prophylactic rules that the Court found to be necessary to protect the Fifth Amendment right against compelled self-incrimination." *Vega v. Tekoh*, 597 U.S. 134, 149 (2022).  But a *Miranda* violation is not the same as a violation of a Fifth Amendment right. *Id.*  Thus, because "a violation of *Miranda* does not necessarily constitute a violation of the Constitution, . . . such a violation does not constitute 'the deprivation of a right . . . secured by the Constitution,'" nor does *Miranda* "confer a right to sue under §1983." *Id.* at 150-152 (quoting 42 U.S.C. §1983).

**IT IS THEREFORE ORDERED** that Harris' motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Detective Nick Stachula of the West Allis Police Department and Officers Schlei, Jason Daering, Bartoshevich, and Klahorst of the Milwaukee Police Department pursuant to Federal Rule of Civil Procedure 4.  Harris is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a).  The current fee for waiver-of-service packages is $8.00 per item mailed.  The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3).  Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.  The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Stachula, Schlei, Daering, Bartoshevich, and Klahorst shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Harris is located.

**IT IS FURTHER ORDERED** that the agency having custody of Harris shall collect from his institution trust account the $334.42 balance of the filing fee by collecting monthly payments from Harris' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Harris is transferred to another institution, the transferring institution shall forward a copy of this Order along with Harris' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Harris is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Harris may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on March 13, 2025.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge